IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD McDONALD, | ) | |
| | ) | C. A. No. 09-442 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| PENNSYLVANIA STATE POLICE; | ) | |
| COLONEL FRANK PAWLOWSKI, | ) | |
| Commissioner of Pennsylvania State Police | ) | |
| in his official capacity; MAJOR JOHN | ) | |
| GALLAHER In his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARYJUDGMENT

### I. PLAINTIFF'S ADA CLAIM IS NOT BARRED BY THE 11TH AMENDMENT.

There are three exceptions to Eleventh Amendment's general prohibition on suits against state agencies: (1) abrogation by Act of Congress, (2) waiver by state consent to suit, and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law. M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 344-345 (3d Cir. 2003). Plaintiff meets not one, but two of those exceptions.

#### A. EX PARTE YOUNG DOCTRINE

Under the Ex parte Young doctrine, it is beyond dispute that the Eleventh Amendment does not bar individuals from bringing federal claims against state officials acting in their official capacities for prospective relief. MCI Telecommunication Corp. v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 508. The Ex parte Young doctrine has been applied to allow individuals to sue state officials for prospective relief under Title II of the

ADA.  See <u>Gallagher v. Allegheny Co.</u>, 2011 WL 284128 at *___ n.15 (W.D. Pa. 2011);

<u>O'Donnell v. Pennsylvania Dep't of Corrections</u>, 2010 WL 455246 at *7 (M.D. Pa. 2010);

see also <u>Bd. of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356, 374 n.9

(2001) (noting that <u>Ex parte Young</u> claims can be brought under Title I of the ADA even

though the Court held there was no valid abrogation of Eleventh Amendment immunity).

Plaintiff has sued Defendant Pawlowski in his official capacity under Title II of the

ADA seeking prospective declaratory and injunctive relief.  Defendant Pawlowski is the

Pennsylvania State Police Commissioner, and, in that role, he also serves as the Chair

of the Municipal Police Officers Education and Training Commission (MPOETC).  As

such, Plaintiff's Title II claim against Defendant Pawlowski is valid under the Ex parte

Young doctrine.

**B**.  <u>**ABROGATION BY ACT OF CONGRESS**</u>[HC1]

Plaintiff sued Defendant Pawlowski only in his official capacity for injunctive relief.

Defendant failed to address the <u>Ex Parte Young</u> exception at all, instead focusing on

whether or not Congress validly abrogated 11th Amendment immunity for purposes of

suit against individual state employees.  Given that Plaintiff's case is valid under Ex

Parte Young, there is no need for the Court to attend to this argument. However, in the

event that this Court does wish to address the issue, it is clear that Congress

unequivocally expressed its intent to waive state's immunity under Title II of the ADA by

stating, "[a] State shall not be immune under the eleventh amendment to the

Constitution of the United States for an action in Federal or State court of competent

jurisdiction…" 42 U.S.C. §12202.  Congress's abrogation of immunity, as applied in this

case, is valid under Section 5 of the Fourteenth Amendment to the Constitution.

Legislation passed pursuant to Section 5 "is valid if it exhibits 'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'  City of Boerne v. Flores, 521 U.S. 507, 520 (1997).  There is a three part test required to determine "congruence and proportionality."  First, the court must identify the constitutional right at issue; second, Congress must have identified a history and pattern of unconstitutional discrimination by the States against people with disabilities; and third, the court must determine whether the rights and remedies created by the statute are congruent and proportional to the constitutional rights that it is supposed to enforce and the record of constitutional violations found by Congress.  Reynolds v. Comm. Pennsylvania, 2010 WL 2572798 (M.D.PA. 2010) at *8 (quoting City of Boerne v. Flores, 521 U.S. 507, 519 (1997).

Defendant Pawlowski mistakenly relies on Roe v. Johnson, 334 F.Supp.2d (S.D.N.Y. 2004) to argue that there has been no finding of discrimination related to professional licenses (Def. Br. at 5), and therefore Title II is an invalid exercise of Congress' authority under Section 5.  The Reynolds Court found to the contrary.  Reynolds, a case analogous to the instant case, involved the denial of a state license to a nurse on the basis of her use of methadone maintenance.  As in this case, the Defendant relied on Roe in arguing that Reynolds' claims failed the second prong of the congruence and proportionality test.  In examining the case under the three prong test, the Reynolds' Court found Roe too narrow an interpretation of Congress's findings of a pattern of state discrimination and therefore unpersuasive.  Reynolds at *9.  The Court noted that the Third Circuit had already concluded that "[s]ubsequent decisions of the courts of appeals have recognized that the second prong of the Boerne test was

conclusively established with respect to Title II by the <u>Lane</u> Court," <u>Bowers</u> at 423, and that Congress had found a pattern of discrimination in the provision of public services by the States. Public services include the provision of professional licensing. Reynolds at *7; <u>Hason v. Medical Bd.</u>, 279 F.3d 1167, 1172 (9th Cir. 2002). The <u>Reynolds</u>' court ultimately found that Congress validly abrogated state sovereign immunity in the area of professional licenses.

As in <u>Reynolds</u>, the right at issue in this case is "the right to be free from irrational disability discrimination." <u>Reynolds</u> at *8 (quoting <u>Bowers v. NCAA</u>, 475 F.3d 524, 555). Similarly, this case involves public services about which the Third Circuit has recognized that Congress found a pattern and history of disability discrimination. <u>Reynolds</u> at * 9;  See <u>Bowers v. NCAA</u>, 475 F.3d 524, 555. The rights and remedies created by Title II are congruent and proportional to the constitutional rights to be enforced because an appropriate balance has been found between the problem of disability discrimination and the Commonwealth's interest in and ability to examine and license its professionals. <u>Reynolds</u> at *10. Therefore, Plaintiff's ADA Title II claim against Defendant Pawlowski is not barred by the 11th Amendment.

II. **DEFENDANT PSP, A RECIPIENT OF FEDERAL FUNDS, CAN BE SUED UNDER THE RA**.

Section 504 of the Rehabilitation Act of 1973 (RA) prohibits discrimination against individuals with disabilities, stating that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. §794(a). A "program or activity," under the RA, includes state departments and agencies. 29

U.S.C. §794(b)(1)(A).

Congress enacted the RA under the Spending Clause and, pursuant to that authority, conditioned states' receipt of federal funding under the RA on their waiver of their Eleventh Amendment immunity. 42 U.S.C. §2000d-7(a)(1). The Third Circuit has unequivocally held that this provision constitutes an unambiguous waiver of sovereign immunity and, as such, state agencies -- including Commonwealth agencies -- can be sued under the RA if they receive federal funds. Koslow v. Commonwealht of Pennsylvania, 302 F.3d 161, 171-72 (3d Cir. 2002); see also Hayberger v. Lawrence Co. Adult Probation and Parole, 551 F.3d 193, 200 (3d Cir. 2008).

It is beyond dispute that Defendant PSP received federal funding. See Act 2008-38A, §223 (Pennsylvania budget bill shows that PSP received approximately $23 million in federal funding in FY 2008-09) (Ex. 8). As such, Defendant PSP waived its Eleventh Amendment immunity to suit in federal court for claims under the RA, such as that asserted by Plaintiff.

It is irrelevant that MPOETC does not receive federal funds. MPOETC is not a separate state agency; it is part of Defendant PSP. See 53 P.S. §2161 (administration of MPOETC is the responsibility of PSP); Organization Chart of PSP (showing MPOETC is one part of PSP's operations), available at www.psp.state.pa.us/portal/server.pt/community/psp/4451/about_us/452786 (visited February 15, 2011) (Ex. 7); Act 2008-38A, § 223 (budget for PSP that includes funding for MPOETC) (Ex. 8). (See, also, plaintiffs' LR 56 C 1(c) #15-16). The Third Circuit has plainly held that a state's waiver of sovereign immunity applies to a state agency's entire program even if only one activity of the agency receives federal funding. Koslow, 302

F.3d at 171-72.  Accordingly, PSP's receipt of federal funds constitutes a waiver of its Eleventh Amendment immunity, even if it does not receive federal funding for MPOETC, and Plaintiff's RA claims against PSP are not barred by the Eleventh Amendment.

**III.     THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER MR. MCDONALD IS A QUALIFIED PERSON WITH A DISABILITY, PRECLUDING SUMMARY JUDGMENT.**

The purpose of the Americans with Disabilities Act (ADA) is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. §12101(b)(1).  Under Title II of the ADA, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.[1] Section 504 of the Rehabilitation Act of 1973 (RA) similarly prohibits disability-based discrimination by any program or activity receiving Federal financial assistance. 29 U.S.C. §794(a).[2]  In employment discrimination cases, the same standards are applicable to Section 504 and ADA cases.  29 U.S.C. §§705(20(B), 794(d); cf. New Directions Treatment Services v. City of Reading, 490 F.3d 293, 302 (3d Cir. 2007) (holding that the ADA's and Section 504's provisions should be analyzed together given that the former simply extends the latter).

In their Motion for Summary Judgment, Defendants do not contend that their actions against Mr. MacDonald were not discriminatory under the ADA and RA.  Rather, they contend only that he is not a qualified person with a disability.  There is substantial

---

[1]There is no dispute that the Pennsylvania State Police, operated and administered by Defendant Pawlowski, is a public entity subject to Title II of the ADA.  42 U.S.C. § 12131(1)(B).
[2]  As discussed above, Defendant Pennsylvania State Police receives federal financial assistance and, thus, is subject to Section 504.  *See* discussion, *supra*, at 4-5.

evidence, however, that creates a genuine dispute of material fact as to both whether Mr. McDonald has a disability under the ADA of 1990 and whether he is qualified. Both of these issues, therefore, should be decided by a jury.

A.      **THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER PLAINTIFF IS A PERSON WITH A DISABILITY**.

The RA and the ADA define "disability" in the same way: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."42 U.S.C. §12102 (2); 29 U.S.C. §705(20)(B). In the instant case, plaintiff McDonald meets the definition because defendants regarded him as having an impairment that substantially limits one or more major life activities. Specifically, Defendant regarded him as having physical injuries due to an automobile accident that they considered to substantially limit him in the major life activities of working and cognition.

A person "is regarded as having an impairment" if he has either "a physical or mental impairment that does not substantially limit major life activities but that is treated by the public entity as constituting such a limitation" or, if he does not have an impairment, but is "still being treated by the public entity as having an impairment that substantially limits major life activities." 28 C.F.R. §35.104; accord 29 C.F.R. §1630.2(l). An impairment includes physiological conditions that affect the musculoskeletal system. 28 C.F.R. §35.104; 29 C.F.R. §1630.2(h). Major life activities include functions such as walking, seeing, hearing, speaking, breathing, learning, and working. 28 C.F.R. §35.104; 29 C.F.R. §1630.2(i). The ability to think, concentrate, and remember, i.e., cognitive function also is a major life activity. Gagliardo v. Connaught Labs, Inc., 311

F.3d 565, 569 (3d Cir. 2002). "An impairment substantially interferes with the accomplishment of a major life activity when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." Title II Technical Assistance Manual II-2.4000; See also 29 CFR § 1630.2(j) (2001) (Title I EEOC regulations).[3]

### 1. THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER DEFENDANTS REGARDED MR. MCDONALD AS SUBSTANTIALLY LIMITED IN HIS ABILITY TO WORK.

A person may be found to be substantially limited in the major life activity of working if one is significantly restricted in one's ability to perform either a class of jobs or a broad range of jobs. 29 C.F.R. § 1630.2(j)(3)(i). A person is disabled in the major life activity of working "if one is significantly restricted in one's ability to perform most of the jobs in one's geographical area that utilize training, knowledge, skills and abilities similar to the job one has been disqualified from performing." Williams v. Philadelphia Housing Auth., 380 F.3d 751, 763 (3d Cir. 2004). Moreover, "…the question of whether an individual is substantially limited in a major life activity is a question of fact. Ibid.

Defendants contend that: (1) they did not consider his ability to work to be significantly impacted; and; (2) the jobs covered by the MPOETC certification are not a

---

[3]  Interpreting the ADA of 1990, the Supreme Court held that, in determining whether a person is substantially limited in his ability to perform a major life activity, the courts must consider any ameliorating effects of mitigating measures, such as medications. Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-483 (1999). Concluding that this interpretation was erroneous and did not reflect its intent, Congress passed the Americans with Disabilities Amendments Act (ADAAA). ADAAA, Pub. L. 110-325, §§ 2(a)(4), 2(b)(4) (Sept. 25, 2008). Under the ADAAA, courts must not consider any mitigating measures used by the individual in assessing whether he has a disability. 42 U.S.C. § 12102(4)(E). Under the revised definition of disability in the ADAAA, there is no question that Mr. McDonald would be a person with a disability, both because he has an disability (without consideration of the use of the medication he takes) and because he meets the revised definition of a person who is regarded as a having a disability. See 42 U.S.C. §§ 12102(1), (3), and (4)(E). However, Mr. McDonald was subjected to discrimination by Defendants prior to the ADAAA's effective date on January 1, 2009, the definitions and standards of the ADA of 1990 are applicable. See Britting v. Shineki, 2010 WL 500442 at *5 (M.D. Pa. 2010) (holding that the ADAAA does not apply retroactively even in cases seeking prospective relief).

"class of jobs" or "broad range of jobs," and, as such, they could not have regarded Mr. McDonald as being substantially limited in the major life activity of working. Defendants' former argument disregards key facts while the latter argument misconstrues the law.

### (A) THERE IS SUBSTANTIAL EVIDENCE FROM WHICH A JURY COULD CONCLUDE THAT DEFENDANTS REGARDED MR. MCDONALD AS UNABLE TO PERFORM POLICE WORK.

Plaintiff McDonald sustained serious spinal injuries in a car accident in 2002. McDonald Dep. at 23-24 (Ex. 33). Although he had extensive surgery in November 2003, including insertion of two cages and several pedicle screws in his spine, to correct those injuries, he continued to experience "severe mechanical pain," that limited his ability to sit, stand, walk, drive, and engage in other similar physical activities. Wecht Rep. at 6, (Ex. 14).

Subsequently, Mr. McDonald had all of the surgical hardware removed from his back. (PlsLR56C1(c)#11,12); (McDonald at 29-30). In addition, Mr. McDonald's treating physicians prescribed Avinza to manage the pain resulting from his musculoskeletal impairment. (McDonald at 49-50). Avinza is a time-released, "long acting oral form of morphine." E-mail from Dr. Hand to Beverly Young dated September 2, 2008 (Ex. 4). Mr. McDonald has taken Avinza since that time with no adverse side effects other than constipation. (McDonald at 51) (Weidner ltr dated October 30, 2008 (Ex. 29). (PlsLR56C1(c) #47, 51). Following the second surgery and because of the pain medication, Avinza, Mr. McDonald's functional abilities improved markedly. (McDonald at 41-48). (PlsLR56C1(c) #6-12).

In July 2007, Elwood City hired Mr. McDonald as its Chief of Police and submitted the required application for his certification to MPOETC. (PlsLR56C1(c)# 18).

Defendants' "medical adviser," Dr. Darby Hand, recommended in October 2007 against certification of Mr. McDonald based on the medical records describing. McDonald's condition before the surgical hardware had been removed from McDonald's back. (PlsLR56C1(c) #24, 25) (E-mail from Dr. Hand to Judy Herr dated Oct. 2, 2007 (Ex. 13). Based on Dr. Hand's recommendation, Defendants denied the Elwood City's request for MPOETC certification for Mr. McDonald, explaining:

> [T]o obtain certification as a municipal police officer, an applicant must have the physical capacity to perform essential job tasks without medical restriction. Based on documents available to the Committee for review and review by the medical advisor to the Commission, Mr. McDonald is not able to perform the essential job tasks of a police officer.

(Letter from Maj. Gallagher to Donald Clyde dated Oct. 11, 2007) (Ex. 12).[4]

This initial determination, and the medical analysis on which it was based, raises a genuine issue of material fact as to whether Defendants considered Mr. McDonald to be substantially limited in the ability to work. Indeed, it suggests that Defendants considered him not merely to be substantially limited in his ability to work, but, in fact, completely unable to work in law enforcement. (See, also PlsLR56C1(c)# 25, 37, 38, 43, 50, 51)[5]

In 2008, another Act 120 application was submitted on behalf of McDonald. As to same, defendants required McDonald to undergo an independent medical examination by a physician chosen by MPOETC. He also submitted to another psychological examination performed by Dr. Uran (PlsLR56C1(c)# 40-43, 45). In April 2008, Dr. Uran, as she did previously, found "no indication that would preclude [Mr.

---

[5] As discussed in the following section, Defendants' disqualification of Mr. McDonald from MPOETC certification and Act 120 training effectively barred him from working in a wide range of law enforcement jobs in Pennsylvania, regardless of duties.

McDonald] from execution of his duties as a police officer or engaging in lethal weapon usage." Uran Rep. dated 4/17/08 at 2 (Ex. 28). Perhaps even more significantly, the MPOETC-selected physician, Dr. Jon Levy, examined Mr. McDonald in August 2008, and found: **"Mr. McDonald is capable of tolerating a full duty position as a police chief as well as performing the essential tasks of a police officer." Levy Rep. at 4 (Ex. 5).**[6] **With respect to Mr. McDonald's use of Avinza, Dr. Levy concluded that he "would be capable of performing his duties, taking narcotics on a daily basis, so long as this is supervised by a specialized pain management physician, such as Dr. Weidner, who currently takes care of Mr. McDonald."** Id. at 4.

Despite these independent evaluations Defendants again refused to certify Mr. McDonald in October 2008. (*Letter from Gallagher to McDonald (Ex. 30). Dr. Hand, in direct contradiction to the records reviewed by him stated: "There is no documentation of objective evidence in any material that supports a claim that Mr. McDonald is 'fit' for the job of a municipal police officer," and, thus, is not qualified for MPOETC certification necessary to work as the Chief of Police for Elwood City. (Ex. 23). Given the extent of his spinal injuries in the accident, Dr. Hand concluded that Mr. McDonald simply "cannot progress from being disabled ... to a condition where he is now 'fit.'" Id. This conclusion, again, demonstrating that Defendants regarded Mr. McDonald as not merely substantially limited, but, rather, completely unable to work in any job for which MPOETC certification is required.

---

[6] Mr. McDonald also underwent a Functional Performance Evaluation in March 2008 at the request of the Elwood City Police Department. [cite]. Mr. McDonald was subjected to strenuous testing (including stair climbing, pushing and pulling a 100-pound sled, and lifting 50 pounds from the floor, and he had no performance problems. [Ex.21]

**(B)** **THE JOBS COVERED BY MPOETC CERTIFICATION ARE A "CLASS" OR BROAD RANGE" OF JOBS**.

A person is substantially limited in the major life activity of working if one is significantly restricted in one's ability to perform "either a class of jobs or a broad range of jobs." 29 C.F.R. §1630.2(j)(3)(i). The courts in this Circuit have held that law enforcement jobs constitute a class of jobs under the ADA. Williams v. Philadelphia Housing Auth., 380 F.3d 751, 763-64 (3d Cir. 2004); McGovern v. MVM, Inc., 545 F. Supp. 2d 468, 475 (E.D. Pa. 2008). This interpretation recently has been confirmed by the EEOC. The EEOC has proposed an amendment to its definition concerning what it means to be "substantially limited" in the major life activity of working. 74 Fed. Reg. 48431, 48442, 48447-48 (Proposed Rule 29 C.F.R. §1630.2(j)(7)). Acknowledging that courts have construed the phrases "class of jobs" and "broad range of jobs" more narrowly than it had intended when it promulgated its initial regulations, the EEOC intends to eliminate the phrase "class of jobs" and substitute "type of job." Id. at 48442. Moreover, the EEOC expressly identifies "law enforcement" as a type of job that could be used to determine whether a person is substantially limited in the major life activity of working.[7]

**(C)** **DEFENDANTS' MISTATE AVAILABLE JOBS**

Defendant argues, however, that if a law enforcement agency thinks nothing more than this particular plaintiff cannot fulfill the requirements of one particular law enforcement job then that plaintiff does not satisfy the "regarded as" standard. Defs'.

---

[7] Although most of the EEOC's proposed regulations are designed to address changes under the ADAAA, the ADAAA did not require the EEOC to address the question of what constitutes the major life activity of working. The EEOC's proposed change to that definition, which reflects the EEOC's initial intent when it enacted regulations to implement the ADA of 1990, thus should be considered in determining whether Mr. McDonald is substantially limited in the major life activity of working.

Br. at 11. Here, however, Defendants did not simply consider Mr. McDonald to be unable to perform a single type of law enforcement job. In not permitting Mr. McDonald to pursue MPOETC/Act 120 certification, Defendants considered him unable to perform any of the many types of police work for which such certification is a mandatory prerequisite.

Act 120 certification is required for police officers[CH2]. "Police officers" are defined as:

> (1) A full-time or part-time employee assigned to criminal or traffic law enforcement duties of any of the following:
>
> (i) A police department of a county, city, borough, town or township.
>
> (ii) Any railroad or street railway police.
>
> (iii) Any campus or university police department.
>
> (iv) The Capitol Police.
>
> (v) The Harrisburg International Airport Police.
>
> (vi) An airport authority police department.
>
> (2) A deputy sheriff of a county of the second class.
>
> (3) A security officer of a first class city housing authority or a police officer of a second class city housing authority.

53 P.S. §2162. Thus, without Act 120 certification, Mr. McDonald could not work in police or several local sheriff departments in any capacity (whether desk jobs, detective work, or traffic duty). He could not perform police work for Amtrak or local transportation agencies' rail lines. He could not work in any Pennsylvania airport as a police officer. He could not work for a housing authority in a law enforcement capacity, Thus, Act 120 certification covers a "class of jobs." As the Third Circuit wrote: "It is

clear from the regulations that, even if one has the ability to perform a broad range of jobs, one is nevertheless disabled if one is significantly restricted in one's ability to perform most of the jobs in one's geographical area that utilize training, knowledge, skills and abilities similar to the job one has been disqualified from performing. <u>Williams v. Philadelphia Housing Authority Police Dept.</u>, 380 F.3d at 763.

Defendants disingenuously suggest that Mr. McDonald could take a job as a "Fish and Boat Commission Officer, a state park ranger, [or] a police officer at fourteen (14) different campus police departments, or a police officer under the Private Police Act. Def. Br. at 12. Even if a few types of peripheral law enforcement jobs are available to Mr. McDonald, it does not negate the fact that inability to secure Act 120 certification bars him from a class or type of job. This court, however, need not decide that issue because the types of jobs suggested by Defendants are not, in fact, available to Mr. McDonald. There is no other certification process in Pennsylvania to be commissioned as a police officer other than Act 120[HC3]. Similarly, based on defendants' drug usage standards, McDonald could not obtain act to 35 "legal weapons" certification, thus barring him from a broad range of private law enforcement positions. (PlsLR56C1(c)# 4 ).

Fish and Boat Commission Officers known as Waterways Conservation Officers, require not only Act 120 training, but an additional 32 weeks of training related to fisheries conservation and watercraft safety. (See Ex. 1). Wildlife Conservation officers require intensive training at the Ross Leffler School of Conservation). Ex 36. Cadet classes are normally formed every two or three years for 20 to 30 cadets. Id. State Park Rangers must complete Act 120 training or an equivalent certification program that

allows for commissioning as a police officer, in addition to specific training in environmental sciences. Even though the term "campus or university police department" in Act 120 does not include the State System of Higher Education and its 14 member institutions, it is the policy of these institutions to require Act 120 certified officers for campus security. Ex.2. In sum, any law enforcement job in Pennsylvania requires Act 120 certification as a matter of law or policy. The inability to secure Act 120 certification accordingly constitutes a substantial limitation in the major life activity of working.[8] Similarly, based on Defendants' drug usage standards, McDonald could not obtain Act 235 "lethal weapons" certification, thus barring him from a broad range of law enforcement positions.

Defendants also argue that Mr. McDonald had a job for two years as Chief of Police/Chief of Operations for Elwood City without certification. Defendant fails to inform the Court, however, that Mr. McDonald was forced to resign from that job because he was denied MPOETC certification. (McDonald at 62). Mr. McDonald then took a job as Chief of Operations for Ellwood City, but he was not allowed to perform those duties that are reserved for an Act 120 certified officer and had to take a cut in pay and benefits. (McDonald at 62-63).

Defendants also mistakenly rely on cases where the would-be police officers were held not to be substantially limited in the major life activity of working because they were unable to meet specific job requirements.[9] In contrast, Mr. McDonald was able to

---

[8] Defendants' reliance on *EEOC v. JB Hunt*, 321 F.3d 69 (2d Cir. 2003), is inapposite. In that case, the court held that long-haul truck jobs was merely a subset of a class of trucking jobs. Thus, exclusion from a long-haul trucking job did not bar an individual from pursuing any number of other trucking jobs. In contrast, virtually all law enforcement jobs in the Commonwealth -- regardless of duties or agency -- are foreclosed to Mr. McDonald and others who are excluded from Act 120 training..

[9] *See Daley v. Koch*, 892 F.2d 212 (2d Cir. 1989) (did not qualify due to behavioral issues); *Wilson v. Pennsylvania State Police Department*, 2004 WL 875573 (E.D. 2004) (unable to meet vision

pass every eligibility requirement, psychological test, functional evaluation, and IME that he was requested to take. Unlike the plaintiffs in the cases cited by Defendants, Mr. McDonald has no actual limitations that prevent him from performing as a police officer, only limitations perceived by the Commission.

Finally, Defendants mistakenly rely on cases in which plaintiffs using medication were not found to be barred from a class of jobs. First, the use of medications does not determine whether or not the jobs involved constitute a "class of jobs," or a broad range of jobs." In Daugherty v. Sajar Plastics, 544 F.3d 696 (6th Cir. 2008), the plaintiff was on an increasing dosage of medications, and the doctor involved took into consideration the dosage in assessing the risk. In this case, Mr. McDonald's dosage has been stable for years, doctors' evaluations support that he is fit for duty, and Dr. Hand never concerned himself with an actual evaluation of risk, including any determination of dosage.

In sum, Defendants excluded Mr. McDonald from Act 120 training and MPOETC certification was based on their perception that his physical impairment rendered him unqualified. Since Act 120 training and MPOETC certification is required for almost all law enforcement jobs in the Commonwealth -- regardless of duties, Defendants' decision certainly reflects their determination that his disability made him substantially limited in the major life activity of working. Moreover, MPOETC applies the same standards with respect to drug usage in connection with its Act 235 "lethal weapons" certification, thereby excluding McDonald from an even broader class of jobs, including

---

requirements); *Joyce v. Suffolk County*, 911 F.Supp. 92) (E.D. NY 1996) (same);*Layser v. Morrison*, 935 F.Supp 562 (E.D. Pa. 1995) (did not qualify due to behavioral issues); *Venclaukus v. State of Connecticut*, 921 F.Supp. 78 (D.Conn. 1995) (unable to meet vision requirements); *Fussell v. Georgia Ports Authority*, 906 F.Supp 1561 (S.D. Ga. 1995) (unable to pass a firearm proficiency test).

watch guard, protective patrolman, detective or criminal investigator carrying and using lethal weapons in employment (See www.portal.state.us/portal/server.pt/community/lethal_weapons_training_program/7611/all_about_act_235/517645) than those limited strictly to public law enforcement.

**2.**     **THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER DEFENDANTS REGARDED MR. MCDONALD AS SUBSTANTIALLY LIMITED INHIS COGNITIVE FUNCTIONING**.

Aside from Defendants' conclusion that Mr. McDonald's musculoskeletal impairment substantially limited his ability to work, they also considered his use of Avinza to control pain resulting from that impairment as substantially limiting his cognitive functioning. Letter from Gallagher to McDonald dated Oct. 14, 2008 (Ex. 30); Email from Hand to Young dated Sept. 2, 2008 (Ex. 30); Hand Dep. at 84. Specifically, Dr. Hand assumed that Mr. McDonald must suffer from side effects related to Avinza use, which would substantially limit his ability to think, remember, and otherwise cognitively function in comparison to the average person (PlsLR56C1(c)#  )Defendants' conclusion that Mr. McDonald was substantially limited in his ability to perform cognitive functioning is sufficient to present to the jury of whether they regarded Mr. McDonald to have a disability.

**B.**     **THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER PLAINTIFF IS QUALIFIED FOR MPOETC CERTIFICATION**.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices… meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. §12131(2); 28 C.F.R. §35.104; 28 C.F.R. §41.32(b). State licensing and certification programs are considered services,

programs, or activities. Reynolds v. Comm. Pennsylvania, 2010 WL 2572798 (M.D.PA. 2010) at *7; Hason v. Medical Bd. of California, 279 F. 3d 1167, 1172 (9th Cir. 2002). The program or activity provided by Defendant Pennsylvania State Police is a certification program through which a submitted applicant becomes certified and can therefore perform duties as a "police officer who is authorized to enforce 18 Pa.C.S. (relating to the Crimes Code), moving violations of 75 Pa.C.S. (relating to the Vehicle Code), and carry a firearm. 37 Pa. Code §203.1. In order to be eligible for certification, a person must meet the requirements specified in 37 Pa. Code §203.11.

At minimum, there is a genuine dispute of material fact as to whether Mr. McDonald is qualified for MPOETC certification and the matter should be decided by the jury. Mr. McDonald submitted all documentation and completed all required examinations. He was denied certification for two invalid reasons. First, he was denied certification by the Waiver of Training Committee because "an applicant must have the physical capacity to perform essential job tasks without medical restriction," and he was found "not able to perform the essential job tasks of a police officer." (ltr from Gallaher to Clyde 10/11/07). Second, Mr. McDonald was subsequently determined to be ineligible for certification "because of his daily use of Avinza, a prescription narcotic, and its potential side effects that could adversely affect his ability to perform the essential tasks of a police officer." (emphasis added) (ltr from Gallaher to Leymarie 10/14/08). The evidence disputes the underlying bases for these conclusions.

Defendants' decision in 2007 to refuse to certify Mr. McDonald was based on his presumed inability to work in law enforcement due to his physical impairment. This decision, however, disregarded the facts. Dr. Hand focused on outdated medical

reports, ignoring Dr. Margolis "Physical Examination" report that McDonald was physically "fit" to perform the duties of a police officer within the Commonwealth Pennsylvania. In view of the fact that Dr. Margolis was McDonald's was his primary care physician who was fully aware of the discectomy, and the latter removal of the "hardware", it is difficult to understand how Dr. Hand could disregard his opinion. Indeed, Dr. Hand, could have contacted McDonald's treating neurosurgeon, Dr, Bonorati but for no apparent reason chose not to (Hand dep. p. 92). Moreover, MPOETC was notified that its decision was based upon outdated medical reports and not upon McDonald's current medical or physical condition. (See, PlsLR56C1(c)#  )

So, too, Defendants continued to disregard the facts of Mr. McDonald's ability to work in law enforcement when it reaffirmed its decision not to certify him in 2008 after an independent physician selected by MPOETC examined him and found him to be capable of working in law enforcement. Defendants' conclusion again was premised on a willful disregard -- without no convincing explanations -- of the substantial evidence that Mr. McDonald was fit for MPOETC certification. For instance, Dr. Hand dismissed the independent examination by the MPOETC-selected physician on the basis that it was a "static evaluation," but had to concede that any other type of report based upon a different type of evaluation would be rare for an examination Hand dep. at 88, 100 (Ex. 35). Dr. Hand rationalized that a functional performance evaluation was the only type that could assess Mr. McDonald's capabilities, Letter from Dr. Hand to Judy Herr (Ex. 23), but then incredibly misconstrued the March 2008 Apple "FPE" that demonstrated Mr. McDonald's capabilities to perform the duties of a police officer. Hand Dep. at 131-132. (PlsLR56C1(c)#34-39).[10]

---

[10] Explains the misinterpretation

Defendants' conclusion that Mr. McDonald's use of Avinza renders him unqualified also is belied by the evidence. Dr. Hand assumed that Mr. McDonald must suffer from side effect related to his use of Avinza. This was based on a simple review of a description of the medication in the Physicians Desk Reference and informal conversations with physicians who treat patients suffering (unlike Mr. McDonald) from cancer or terminal illnesses. (Hand dep. at 83). Yet, Dr. Hand admitted that some individuals may never have any side effects and that he had no evidence that Mr. McDonald ever suffered from any Avinza-related side effects. (PlsLR56C1(c)# 51-54). Moreover, MPOETC's chosen independent physician found no problem related to Mr. McDonald's use of Avinza and stated that any potential concerns could be addressed by cognitive testing, but that he did not request Mr. McDonald to undergo such testing. (PlsLR56C1(c)# 47-49).

Defendants now suggest that Mr. McDonald is not able to engage in the "coherent, quick and precise decision making ... paramount,'" to law enforcement duties and, thus, is unable to protect the public. This is sheer speculation based on Dr. Hand's misguided conclusions that disregard evidence to the contrary. The evidence -- from MPOETC's own professionals -- indicates that Mr. McDonald is capable of working in law enforcement. Indeed, the facts in this case are uncontroverted that defendants' in direct violation of the ADA did not make an "individualized" determination as to Mr. McDonald's physical and/or cognitive capabilities to perform the duties of a municipal police officer within the Commonwealth Pennsylvania. See. e.g. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999) (The "direct threat"] criterion ordinarily requires "an individualized assessment of the individual's

present ability to safely perform the essential functions of the job," <u>29 CFR § 1630.2(r)</u> <u>(1998)</u>".  See, also <u>School Bd. of Nassua County v. Arline</u>, 480 U.S. 273, 278-279 (1987):<u>Bragdon v. Abbott</u> 542 U.S.624,626,(1998)

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE PLAINTIFF'S DUE PROCESS CLAIM SHOULD BE DENIED.**

The defendant's also seek summary judgment in this case on the plaintiff's' due process claim. This same issue was addressed by this court in the defendants' motion to dismiss.. This court's October 2, 2009 opinion on the issue is controlling as to same facts that the court identified as in dispute are still in dispute.  (See, e.g. PLs LR56 C1cStatement #13, 14, 30-31).   Further, defendants are not entitled to qualified immunity since at the time of their decision the law was clearly established that once a cognizable "property interest" has been established, an individual is entitled to due process before that property interest can be deprived by the State and/or by persons acting under color of state law.   <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570 (1972), <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972), <u>Logan v. Zimmerman Brush Co., 455</u> <u>U.S. 422, 430, (1982)</u> <u>Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, (1985)</u> <u>Speck v. City of Phila.</u>, 2007 U.S. Dist. LEXIS 55769 (EDPA.2008).   Indeed, <u>Speck,</u> <u>which deals specifically with the instant certification issue was decided January, 2008,</u> <u>11 months before the decision to deny McDonald Act 120 certification and Gallaher's</u> <u>November 14, 2008 (Def Ex. D) correspondence denying McDonald a right to a hearing</u> <u>on MPOETC's decision.</u>

## **CONCLUSION**

Based on the foregoing, this Court should deny the defendants' motion for summary judgment in its entirety.

Respectfully submitted,

/s/ Timothy P. O'Brien
Timothy P. O'Brien, Esquire
PA I.D. #22104
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Attorney for plaintiff