# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:09 – cv – 00442 |
| | ) | |
| PENNSYLVANIA STATE POLICE; | ) | |
| COLONEL FRANK PAWLOWSKI, | ) | |
| Commissioner of Pennsylvania State Police | ) | |
| In his official capacity; MAJOR JOHN | ) | |
| GALLAHER, In his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 46). The issues have been fully briefed (Document Nos. 47 and 56). The parties have also developed their respective positions regarding the Concise Statements of Material Facts and have submitted numerous exhibits (Document Nos. 48, 49, 57, 58, 59). The summary judgment motion is ripe for disposition.[1]

## Factual and Procedural Background

The Court appreciates the extensive appendix provided by Plaintiff Richard McDonald (hereinafter "Plaintiff" or "McDonald"), which sets forth the background and chronology of the dispute. Although the Court recognizes that Defendants have not had the opportunity to respond

---

[1] Also pending before the Court is DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S L.R. 56.1.C.1(c) MATERIAL FACTS (Document No. 60). This motion will be **DENIED AS MOOT** as a reply is unnecessary.

to Plaintiff's additional facts, at the summary judgment stage of the case all facts and reasonable inferences therefrom must be drawn in favor of the non-moving party.

Defendant Pennsylvania State Police ("PSP") is an agency of the Commonwealth of Pennsylvania. The PSP, among other things, administers the Municipal Police Officers Education and Training Commission ("MPOETC"), a twenty member commission charged with the responsibility to establish and administer training and certification of police officers. 53 Pa.C.S.A. § 2164. In order to serve as a police officer in a municipal police department, the officer must be certified by MPOETC pursuant to Act 120. Defendant Pawlawski was the Commissioner of the PSP and served as the Chairman of MPOETC by virtue of that position. 53 Pa.C.S.A. § 2163. Defendant Gallaher served as the Executive Director of MPOETC and administered the program and staff of fifteen people on a daily basis. MPOETC administrative officer Beverly Young, certification unit supervisor Judy Herr and application processor Erica Aikens were more directly involved in processing applications for certification.

Plaintiff has, throughout his career, been employed in various law enforcement capacities in Pennsylvania. Between 1989 and 2002, Plaintiff was employed by the City of Pittsburgh Bureau of Police as a uniformed officer, a member of the drug task force and as a detective in the homicide unit. As a Pittsburgh Police officer, Plaintiff was certified by MPOETC as having fulfilled the necessary education and training requirements to serve in that capacity. Following his tenure as a Pittsburgh Police officer, Plaintiff was employed by the Pennsylvania Office of Attorney General as a "Special Agent II" from 2002 to 2006. Act 120 certification was not required for McDonald's employment with the Commonwealth and his certification lapsed.

In December 2002, McDonald suffered a work-related automobile accident, in which he sustained a herniated disc at L5-S1. He continued to perform his duties as a special agent for approximately one year after the accident. Due to chronic pain, McDonald had lumbar decompression and fusion surgery in November 2003. After the surgery, McDonald attempted to resume his duties as a special agent, but was unable to do so, and his employment was eventually terminated.² In July 2006, McDonald had additional surgery to remove the pedicle screw and other hardware that had been implanted in the original surgery. McDonald received additional therapy, a continuing course of pain management therapy, and his condition began to improve.

As a direct result of his injuries, Plaintiff was lawfully prescribed the narcotic pain reliever Avinza. At all relevant times, he was prescribed a stable dosage of 60 mg per day. McDonald testified that, with Avinza, he has no physical limitations that would prevent him from performing the duties of a police officer. He can bend, handcuff a suspect who is lying on the ground, lift a person, and subdue a person. McDonald is limited only as to the ability to sit in a car for hours on end or to stand in one place for an extended period of time. As McDonald explained, the Avinza helps to minimize the pain from his nerve damage so that he is able to perform his life activities.

In May 2007, the Borough of Ellwood City, Pennsylvania (the "Borough") offered Plaintiff the position of Police Chief. In order to serve in that capacity, Plaintiff was required to be re-certified by MPOETC. On August 20, 2007, Plaintiff and the Borough entered into an employment agreement and Plaintiff commenced work as the Chief of Police for the Borough.

---

² McDonald filed suit, alleging that he had not received appropriate accommodation of his back injury.

In June/July 2007 and again in April 2008, the Borough of Ellwood City requested that MPOETC re-certify Plaintiff as a police officer.

The MPOETC application contained a Physical Examination report completed by Dr. Andrew Margolis on May 25, 2007, which stated that McDonald was physically fit to be certified as a police officer. The MPOETC application also contained a Psychological Report dated June 5, 2007 by Julie Uran, Ph.D., Psychologist. Dr. Uran opined that there was "no indication that would preclude [McDonald] from execution of duties as a police officer to include weapon usage." The Report noted McDonald's car accident and resultant back pain, but did not specifically address the use of Avinza.

On July 16, 2007, MPOETC notified the Borough that McDonald had passed the Certification Exam and, upon receipt of a completed application with required documentation, he would be recommended for certification as a police officer as a "waiver of training" applicant. On October 12, 2007, MPOETC notified the Borough that the Commission had decided to deny certification. The letter explained that based on the documents reviewed by the medical advisor to the Commission, McDonald did not have the physical capacity to perform the essential job tasks of a police officer without medical restriction. The "medical advisor" was Darby Hand, D.O., FACP, a PSP medical officer. In a two-page email on October 2, 2007 to Judy Herr, Dr. Hand explained his rationale for concluding that McDonald was physically unable to perform the duties of a police officer. In essence, Dr. Hand credited the consensus of three pre-2006 neurosurgeon independent medical examiners ("IMEs") that McDonald had reached Maximum Medical Improvement ("MMI") and was limited to light or medium-light duty as a result of the car accident. Dr. Hand found it "difficult to believe" the contrary opinion expressed by Dr.

4

Margolis in his May 2007 Physical Examination report. Dr. Hand did not reference McDonald's use of Avinza.

In response to the denial of certification, McDonald sent a letter to MPOETC on October 22, 2007 in which he sought reconsideration of its decision, offered to provide updated medical records and/or undergo an IME at his own cost, and inquired into his right to a hearing. On November 26, 2007, an attorney from the Office of Chief Counsel to the PSP notified McDonald that he had no right to a hearing.

On January 9, 2008, as a result of MPOETC's refusal to provide certification under Act 120, the Borough demoted McDonald to the position of Chief of Operations, a position with lower pay and benefits. The Borough suggested this arrangement because it wanted McDonald to remain in the job. The parties re-negotiated a two-year contract under which McDonald performed very similar day-to-day activities at the police department.

On March 12, 2008, Charles H. Ziegler, D.O., performed a Functional Performance Evaluation and opined that McDonald was capable of performing the essential demands of the Police Chief job. Dr. Ziegler noted the prior surgeries and some residual radiculopathy in the left leg, but concluded that McDonald had "no functional limitations." Dr. Ziegler did not address the use of Avinza. McDonald forwarded the IME to Beverly Young on April 12, 2008. On April 17, 2008, Dr. Uran performed another Psychological Examination and prepared a Report. Dr. Uran opined that McDonald was psychologically capable of exercising appropriate judgment and restraint to be certified as a police officer. Dr. Uran further stated: "There is no indication that would preclude him from execution of duties as a police officer or engaging in lethal

weapon usage." She averred that her report was submitted "with the highest degree of psychological certainty."

On June 9, 2008, Dr. Hand sent another memorandum to Judy Herr which addressed Dr. Ziegler's medical opinion and explained the basis for Dr. Hand's continued belief that McDonald was not fit to serve as a police officer. Plaintiff's Exhibit 23. For the purpose of summary judgment, the Court will assume that Dr. Hand misinterpreted Dr. Ziegler's evaluation of McDonald's physical capabilities. In addition, Dr. Hand continued to emphasize the lack of documentation to explain how McDonald's condition could have substantially improved since 2006, when three IME's had opined that he was disabled.

On July 8, 2008, MPOETC selected Dr. John Levy to perform another IME to evaluate McDonald's physical capabilities. On August 13, 2008, after reviewing medical records and performing a physical examination, Dr. Levy opined that McDonald was "capable of tolerating a full duty position as police chief as well as performing the essential tasks of a police officer." Plaintiff's Exhibit 5. Dr. Levy then stated:

> My only concern is the patient does take oral narcotics on a daily basis. However, I will state that by report he has not taken increasing doses. He has taken a stable amount for the past year. In my opinion, I believe that he would be capable of performing his duties, taking narcotics on a daily basis, as long as this is supervised by a specialized pain management physician, such as Dr. Weidner, who currently takes care of Mr. McDonald. I am unaware of the police policy referable to the use of prescribed narcotics in the workplace. If in fact they are allowed, I believe that Mr. McDonald is capable of reentering the workplace as a police officer full time, full duty without restrictions. If there is any concern in terms of his mental abilities referable to the use of narcotics, certainly cognitive testing through psychological testing could be considered. Based on his presentation today, my opinion is that Mr. McDonald is fit for duty as the police chief of Ellwood City Police Department and capable of performing all the essential tasks of a police officer.

6

On September 2, 2008, Dr. Hand sent another memorandum to Beverly Young, which expressed his analysis of Dr. Levy's IME.[3] Plaintiff's Exhibit 4. Dr. Hand acknowledged that Dr. Levy opined that McDonald was fit for duty, but for the first time, focused on the use of Avinza. Dr. Hand recognized that McDonald was under the care of a pain control physician and that there was no evidence that he was abusing Avinza. On the other hand, Dr. Hand was concerned that Avinza was a long acting oral form of morphine with numerous reported potential side effects. Dr. Hand stated that if a member of the PSP "were to take this drug for a legitimate reason they would be excluded from any critical duty and placed on medically limited duty until such time as they no longer used this drug." Dr. Hand believed that chronic use of Avinza could result in a cognitive deficit and he was "not able to say that Mr. McDonald would be able to function in the capacity of a certified municipal police officer who is engaged in the day to day tasks of law enforcement in which coherent, quick and precise decision making is paramount." In summary, Dr. Hand opined:

> I am *mightily resistant* (emphasis in original) to the assertion, or belief, that they would be able to respond appropriately in situations that require split second thinking and instantaneous action to protect themselves and the public. I believe it to be imprudent to allow Mr. McDonald to be certified as a municipal police officer while using this medication.

Dr. Hand did not know whether McDonald actually suffered from any of the potential side effects of Avinza and he acknowledged that no physical or mental side effects had been reported. Nevertheless, as set forth in a letter dated October 14, 2008, MPOETC continued to withhold Act 120 certification "because of his daily use of Avinza, a prescription narcotic, and its potential

---

[3] Defendant Gallaher is copied on Young's request to Dr. Hand for an updated opinion, but is not copied on any of Dr. Hand's responses. The record reflects that Gallaher had only a tangential, supervisory role in the processing of McDonald's application.

7

side effects . . . ." Counsel for McDonald made another request for a hearing on October 28, 2008. On October 30, 2008, Lisa A. Weidner, M.D., opined that McDonald had been stable on his present medications, had demonstrated no side effects from the Avinza and was "neurologically intact and functioning fully cognitively." Dr. Weidner had no concerns that McDonald would have any limitations due to his chronic pain or the medications prescribed for treating that pain. On November 14, 2008, MPOETC again advised counsel that McDonald was not entitled to a hearing.

McDonald's contract as Chief of Operations with the Borough expired on December 31, 2008. Pursuant to a settlement agreement,[4] McDonald remained on a "leave of absence" for the entire 2009 calendar year. McDonald is now employed doing investigative services for the Travelers Group.

The Complaint in this case was filed by Plaintiff on April 15, 2009 and asserts the following claims: (1) a violation of the Rehabilitation Act by the Pennsylvania State Police ("PSP"); (2) a violation of the Americans With Disabilities Act ("ADA") by Defendant Pawlowski in his official capacity as Commissioner of the PSP; and (3) a Due Process violation by Defendant Gallaher in his individual capacity. Plaintiff seeks compensatory damages, injunctive relief -- including an Order that Defendants certify Plaintiff as a police officer -- and attorneys fees and costs.

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment. In interpreting Rule 56,

---

[4] McDonald had filed an EEOC charge against the mayor of Ellwood City.

the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has fulfilled this responsibility, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

## **Legal Analysis**

MPOETC is empowered under Pennsylvania law to certify whether or not a candidate has the physical and mental ability to serve as a police officer. MPOETC concluded that McDonald should not receive such certification due to his long-term use of the narcotic drug Avinza. Plaintiff points to evidence from numerous medical professionals who have opined that he is physically and mentally capable of performing the duties and responsibilities of a police chief and suffers no side effects from Avinza. Nevertheless, MPOETC has adhered to a rigid position that use of Avinza prevents McDonald from being certified. In essence, Plaintiff is asking the Court (or a jury) to override MPOETC's certification decision.

<u>ADA and Rehabilitation Act Claims</u>

McDonald alleges that Defendants regarded him as physically and/or cognitively disabled due to his back injury and use of Avinza. Defendants contend that the ADA and Rehabilitation Act claims are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution. Defendants also contend that the Rehabilitation Act claim must fail because MPOETC receives no federal funding. Finally, Defendants contend that Plaintiff cannot show

10

that he has an actual disability, that he is otherwise qualified for the position of police officer, or that he is significantly restricted from performing a broad range of jobs. Plaintiff responds vigorously that his ADA claim for prospective relief is not barred pursuant to the *Ex Parte Young* doctrine and that Congress has abrogated Eleventh Amendment immunity in the ADA, 42 U.S.C. § 12202. Plaintiff further argues that it is irrelevant that MPOETC does not directly receive federal funds because it is not a separate agency, but rather, is part of the PSP, which does receive federal funds. Finally, Plaintiff contends that there are a multitude of factual disputes as to whether he is a qualified person with a physical or cognitive disability, whether Defendants regarded him as substantially limited in his ability to work and whether he was excluded from a broad class of jobs. Ultimately, McDonald seeks to convince a jury that MPOETC was simply wrong in its refusal to certify him to perform the job of police chief.

The Court need not resolve these disputes because there is a foundational flaw in these claims. Specifically, the United States Court of Appeals for the Third Circuit has recently rejected very similar ADA and Rehabilitation Act claims and held that MPOETC is not a "covered entity."

In *Lekich v. Pawlowski*, 361 Fed. Appx. 322 (3d Cir. January 15, 2010) (Smith, J.) (non-precedential), a police officer candidate had completed the police training program and received an offer of employment from a borough police department, contingent upon MPOETC certification. The examining physician determined that Lekich was color-blind, in contravention of MPOETC certification requirements. The employment offer was then rescinded. Lekich secured another doctor's opinion that the color perception problem would not interfere with his ability to perform the job of a police officer and sought to have MPOETC either waive the vision

requirement or consider the new medical opinion. MPOETC refused, because the application packet had been withdrawn by the borough. As in this case, the conduct at issue occurred prior to January 1, 2009, the effective date of the ADA Amendments Act of 2008 ("ADAAA").[5]

Lekich filed claims under the ADA, Rehabilitation Act, Section 1983 and the Pennsylvania Human Relations Act against Pawlowski, in his official capacity as Chairman of MPOETC. The district court granted summary judgment to Defendant on all claims and the Third Circuit Court of Appeals affirmed. Our Appeals Court held that "MPOETC did not violate the non-discrimination in employment provisions of the ADA because it is not subject to them." *Id.* at 326. The Court explained that MPOETC is not a "covered entity" as defined in 42 U.S.C. § 12111(2), but "is merely a governmental body that certifies that an applicant has or has not met certain preordained guidelines when a police department – an employer – directs it to process an application." *Id*. at 325-26. The Court recognized that the same analysis was dispositive of the Rehabilitation Act claim because employment discrimination claims under the ADA and Rehabilitation Act are governed by the same standards. *Id*. at 326 (*citing* 29 U.S.C. § 794(d)).

The analysis in *Lekich*, while not binding precedent, is certainly persuasive. McDonald's ADA and Rehabilitation Act claims suffer from the same shortcomings as those of Lekich. Pursuant to 42 U.S.C. § 12111(2), the term "covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." MPOETC is not a "covered entity" and, thus, is not subject to the ADA discrimination provisions. *See* 42 U.S.C. § 12112(a). The PSP is even further removed from the employment decision, as it is merely the state agency

---

[5] In *Britting v. Secretary, Dept. Of Veterans Affairs*, Slip Copy, 2011 WL 300240 (3d Cir. February 1, 2011), the Court of Appeals held that the ADAAA is not retroactive.

under which MPOETC is organized, *see* 53 Pa.C.S.A. § 2164, and had no direct role in the matters at issue. The claim against Pawlowski in his "official capacity" is merely an alternative method of pleading an action against the PSP. *Lekich*, 361 Fed. Appx. at 325 (*citing Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002)). In sum, neither the PSP nor Pawlawski, in his official capacity as Commissioner of the PSP, is a "covered entity" under the ADA or Rehabilitation Act. Accordingly, Defendants are entitled to summary judgment on Counts I and II.

Section 1983 Due Process Claim

Plaintiff also asserts a Section 1983 claim against Defendant Gallaher in his personal capacity. McDonald alleges that his procedural due process rights were violated because MPOETC did not provide him with personal notice, a hearing, and/or the right to appeal. Defendants contend that McDonald's due process rights were not implicated by the discretionary decision to deny certification; that he received appropriate notice; and that the only relief to which he arguably could be entitled is a hearing. Defendant further contends that Gallaher is entitled to qualified immunity. Plaintiff's argument on the Section 1983 claim is very limited and does not discuss the evidentiary record.

There is no explicit formula for that which constitutes adequate protection under the Fourteenth Amendment Due Process Clause. *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). McDonald's interest in continued employment must be balanced against the interest of Pennsylvania in providing physically and mentally qualified individuals to serve as police officers. The Court noted in its October 2, 2009

13

Opinion that Defendants had made "compelling arguments" to dismiss the due process claim but concluded that it was premature at the motion to dismiss stage of the proceeding.

MPOETC and McDonald engaged in an interactive process which extended over fifteen months. The regulation governing notice, 37 Pa.Code § 203.13, provides that MPOETC will supply written verification "to the applicant's employing police department" rather than the individual applicant. In any event, the record reflects that McDonald received actual notice of each of the decisions of MPOETC to deny certification, and the basis for those decisions.

Moreover, McDonald's application received extensive "process." In *Wilson*, which involved an analogous issue regarding whether court security officers were medically qualified, the United States Court of Appeals for the Third Circuit concluded that appropriate "process" had been given:

> After the appellants were termed medically disqualified, but before they were terminated, they were provided with notice of their medical disqualification and offered an opportunity to respond with medical documentation from their own doctors regarding their ability to perform their positions. While this is not a traditional hearing, the process afforded the appellants is sufficient given the balance of their interest in maintaining employment and the government's interest in security. A more rigorous process would not significantly enhance the accuracy of the medical qualification process. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Therefore, the District Court correctly determined that the appellants were provided sufficient process.

*Id*. at 178-79. The same analysis applies to the factual record in this case. MPOETC's review included exchanges of correspondence, consideration of the medical opinions and supplemental medical opinions provided by McDonald, the performance of an additional IME at MPOETC's expense, and three separate analyses by Dr. Hand. The gravamen of McDonald's theory is not that MPOETC ignored his evidence or failed to engage in an evaluation of his position. Rather, McDonald simply disagrees with MPOETC's ultimate decision to deny certification. While

there was no "traditional hearing," McDonald had ample opportunity to provide documentation from his examining physicians. The *Wilson* Court held that this procedure was sufficient. Even assuming that McDonald had a protectable property interest in his continued employment by the Borough, there was no lack of "due process."

In addition, the evidentiary record would not enable a reasonable jury to find Gallaher personally liable for an alleged deprivation of McDonald's due process rights, as Gallaher acted primarily in a limited supervisory capacity. As the *Speck* Court observed: "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Id.* at *7 (*citing Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). In the alternative, a reasonable official in Gallaher's position would not have known that his conduct violated McDonald's due process rights. *See Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 191-193 (3d Cir. 2009). Plaintiff has not identified any "clearly established" right to additional process. In accordance with *Wilson*, MPOETC's process was appropriate. Moreover, in response to each request by McDonald for an administrative hearing, Gallaher obtained a legal opinion from the PSP Office of Chief Counsel that additional proceedings were not warranted. Thus, Gallaher is entitled to qualified immunity. Accordingly, Defendants are entitled to summary judgment on Count III.

## Conclusion

Mr. McDonald is a litigant for whom the Court feels empathy. He has certainly presented substantial evidence of his fitness to serve as a police chief. On the other hand,

McDonald is asking the Court (or a jury) to substitute its own view of his fitness for that of MPOETC, the Commission created by the Commonwealth of Pennsylvania to perform that role. The Court need not resolve the difficult balancing of the individual and societal interests in this case because McDonald's claims do not fit within the contours of the existing law.

In accordance with the foregoing, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 46) will be **GRANTED**.  An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:09 – cv – 00442 |
| | ) | |
| PENNSYLVANIA STATE POLICE; | ) | |
| COLONEL FRANK PAWLOWSKI, | ) | |
| Commissioner of Pennsylvania State Police | ) | |
| In his official capacity; MAJOR JOHN | ) | |
| GALLAHER, In his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF THE COURT

**AND NOW**, this 1st day of April, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 46) is **GRANTED**. DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S L.R. 56.1.C.1(c) MATERIAL FACTS (Document No. 60) is **DENIED AS MOOT.**

The clerk is directed to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Timothy P. O'Brien, Esq.
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219


Mark J. Murphy, Esq.
Disability Rights Network of PA
1315 Walnut Street, Suite 400
Philadelphia, PA 19107


Carol Horowitz
Disability Rights Network of PA
429 Fourth Avenue, Suite 701
Pittsburgh, PA 15219

Robert A. Willig
Tracey A. Wilson
Office of the Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219