**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:09 – cv – 00442 |
| | ) | |
| PENNSYLVANIA STATE POLICE; | ) | |
| COLONEL FRANK PAWLOWSKI, | ) | |
| Commissioner of Pennsylvania State Police | ) | |
| in his official capacity; MAJOR JOHN | ) | |
| GALLAHER, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court on remand is DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT (Doc. No. 46). The Court's Memorandum Opinion and Order of April 1, 2011,

which granted the motion, was affirmed in part and vacated in part by the United States Court of

Appeals for the Third Circuit in a non-precedential opinion dated June 22, 2012. Subsequently,

the remaining issues have been additionally briefed by counsel (Document Nos. 69 and 70).

Further, the United States has filed a Notice of Intervention with an attached memorandum of

law. The summary judgment motion is now ripe for disposition.


**Factual and Procedural Background**

The factual background was set forth in the Court's previous Memorandum Opinion, to

which neither party has objected. For convenience, it is repeated herein.

Defendant Pennsylvania State Police ("PSP") is an agency of the Commonwealth of

Pennsylvania. The PSP, among other things, administers the Municipal Police Officers

Education and Training Commission ("MPOETC"), a twenty member commission charged with

the responsibility to establish and administer training and certification of police officers. 53 Pa.C.S.A. § 2164. In order to serve as a police officer in a Pennsylvania municipal police department, the officer must be certified by MPOETC pursuant to Pennsylvania Municipal Police Education and Training Act ("Act 120"), 53 Pa.C.S.A. § 2161 et seq. Defendant Pawlowski was the Commissioner of the PSP and served as the Chairman of MPOETC by virtue of that position. 53 Pa.C.S.A. § 2163. Defendant Gallaher served as the Executive Director of MPOETC and administered the program on a daily basis with a staff of fifteen people. MPOETC administrative officer Beverly Young, certification unit supervisor Judy Herr and application processor Erica Aikens were directly involved in processing applications for certification.

Plaintiff has, throughout his career, been employed in various law enforcement capacities in Pennsylvania. Between 1989 and 2002, Plaintiff was employed by the City of Pittsburgh Bureau of Police as a uniformed officer, a member of the drug task force and as a detective in the homicide unit. As a Pittsburgh Police officer, Plaintiff was certified by MPOETC as having fulfilled the necessary education and training requirements to serve in that capacity. Following his tenure as a Pittsburgh Police officer, Plaintiff was employed by the Pennsylvania Office of Attorney General as a "Special Agent II" from 2002 to 2006. Act 120 certification was not required for Plaintiff's employment with the state Attorney General and his certification lapsed.

In December 2002, McDonald suffered a work-related automobile accident, in which he sustained a herniated disc at L5-S1. He continued to perform his duties as a special agent for approximately one year after the accident. Due to chronic pain, McDonald had lumbar decompression and fusion surgery in November 2003. After the surgery, McDonald attempted

to resume his duties as a special agent, but was unable to do so, and his employment was eventually terminated.[1]  In July 2006, McDonald had additional surgery to remove the pedicle screw and other hardware that had been implanted in the original surgery.  McDonald received additional therapy, a continuing course of pain management therapy, and his condition began to improve.

As a direct result of his injuries, Plaintiff was lawfully prescribed the narcotic pain reliever Avinza at a stable dosage of 60 mg per day.  McDonald testified that, with Avinza, he has no physical limitations that would impede him from performing the duties of a police officer.  He can bend, handcuff a suspect who is lying on the ground, lift and/or subdue a person.  McDonald is limited only as to the ability to sit in a car for hours on end or to stand in one place for an extended period of time.  As McDonald explained, the Avinza helps to minimize the pain from his nerve damage so that he is able to perform his life activities.

In May 2007, the Borough of Ellwood City, Pennsylvania (the "Borough") offered Plaintiff the position of Police Chief.  In order to serve in that capacity, McDonald was required to be re-certified by MPOETC.  On August 20, 2007, Plaintiff and the Borough entered into an employment agreement and Plaintiff commenced work as the Chief of Police.  In June/July 2007 and again in April 2008, the Borough of Ellwood City requested that MPOETC re-certify Plaintiff as a police officer.

The MPOETC application included a Physical Examination report completed by Dr. Andrew Margolis on May 25, 2007, which stated that McDonald was physically fit to be certified as a police officer.  The MPOETC application also contained a June 5, 2007

---

[1] McDonald filed suit, alleging that he had not received appropriate accommodation of his back injury.

3

Psychological Report from Julie Uran, Ph.D., who opined that there was "no indication that would preclude [McDonald] from execution of duties as a police officer to include weapon usage." The Report noted McDonald's car accident and resultant back pain, but did not specifically address his use of Avinza.

On July 16, 2007, MPOETC notified the Borough that McDonald had passed the Certification Exam and, upon receipt of a completed application with required documentation, he would be recommended for certification as a police officer as a "waiver of training" applicant. On October 12, 2007, MPOETC notified the Borough that the Commission had denied certification of McDonald. The letter explained that based on the documents reviewed by the medical advisor to the Commission, McDonald did not have the physical capacity to perform the essential job tasks of a police officer without medical restriction. The "medical advisor" was Darby Hand, D.O., FACP, a PSP medical officer. In a two-page email on October 2, 2007 to Judy Herr, Dr. Hand explained his rationale for concluding that McDonald was physically incapable of performing the duties of a police officer. In essence, Dr. Hand credited the consensus of three pre-2006 neurosurgeon independent medical examiners ("IMEs") that McDonald had reached Maximum Medical Improvement ("MMI") and was limited to light or medium-light duty as a result of the injuries from his car accident. Dr. Hand found it "difficult to believe" the contrary opinion expressed by Dr. Margolis in his May 2007 Physical Examination report. Dr. Hand did not specifically reference McDonald's use of Avinza.

In response to the denial of certification, McDonald sent a letter to MPOETC on October 22, 2007 in which he sought reconsideration of its decision, offered to provide updated medical records and/or undergo an IME at his own cost, and inquired into his right to a hearing. On

4

November 26, 2007, an attorney from the Office of Chief Counsel to the PSP notified McDonald that he had no right to a hearing.

On January 9, 2008, as a result of MPOETC's refusal to provide certification under Act 120, the Borough demoted McDonald to the position of Chief of Operations, a position with lower pay and benefits. The Borough suggested this arrangement because it wanted McDonald to remain on the job. The parties re-negotiated a two-year contract under which McDonald performed very similar day-to-day activities at the police department.

On March 12, 2008, Charles H. Ziegler, D.O., performed a Functional Performance Evaluation at the request of the Borough and opined that McDonald was capable of performing the essential demands of the Police Chief job. Dr. Ziegler noted the prior surgeries and some residual radiculopathy in the left leg, but concluded that McDonald had "no functional limitations." Dr. Ziegler did not address the use of Avinza. McDonald forwarded the IME to Beverly Young at MPOETC on April 12, 2008. On April 17, 2008, Dr. Uran performed another Psychological Examination and prepared a Report in which she opined that McDonald was psychologically capable of exercising appropriate judgment and restraint to be certified as a police officer. Dr. Uran further stated: "There is no indication that would preclude him from execution of duties as a police officer or engaging in lethal weapon usage." She averred that her report was submitted "with the highest degree of psychological certainty."

On June 9, 2008, Dr. Hand sent another memorandum to Judy Herr which addressed Dr. Ziegler's medical opinion and explained the basis for Dr. Hand's continued belief that McDonald was not fit to serve as a police officer. (Plaintiff's Exhibit 23.) For the purpose of summary judgment, the Court will assume that Dr. Hand misinterpreted Dr. Ziegler's evaluation of

McDonald's physical capabilities.  In addition, Dr. Hand continued to emphasize the lack of documentation to explain how McDonald's condition could have substantially improved since 2006, when three IME's had opined that he was disabled.

On July 8, 2008, MPOETC selected Dr. John Levy to perform another IME to evaluate McDonald's physical capabilities.  On August 13, 2008, after reviewing medical records and performing a physical examination, Dr. Levy opined that McDonald was "capable of tolerating a full duty position as police chief as well as performing the essential tasks of a police officer." (Plaintiff's Exhibit 5.)  Dr. Levy then stated:

> My only concern is the patient does take oral narcotics on a daily basis.  However, I will state that by report he has not taken increasing doses.  He has taken a stable amount for the past year.  In my opinion, I believe that he would be capable of performing his duties, taking narcotics on a daily basis, as long as this is supervised by a specialized pain management physician, such as Dr. Weidner, who currently takes care of Mr. McDonald.  I am unaware of the police policy referable to the use of prescribed narcotics in the workplace.  If in fact they are allowed, I believe that Mr. McDonald is capable of reentering the workplace as a police officer full time, full duty without restrictions.  If there is any concern in terms of his mental abilities referable to the use of narcotics, certainly cognitive testing through psychological testing could be considered.  Based on his presentation today, my opinion is that Mr. McDonald is fit for duty as the police chief of Ellwood City Police Department and capable of performing all the essential tasks of a police officer.

On September 2, 2008, Dr. Hand sent another memorandum to Beverly Young at MPOETC, which expressed his analysis of Dr. Levy's IME.[2]  (Plaintiff's Exhibit 4.)  Dr. Hand acknowledged that Dr. Levy opined that McDonald was fit for duty, but for the first time, focused on the use of Avinza.  Dr. Hand recognized that McDonald was under the care of a pain

---

[2] Defendant Gallaher is copied on Young's request to Dr. Hand for an updated opinion, but is not copied on any of Dr. Hand's responses.  The record reflects that Gallaher had only a tangential, supervisory role in the processing of McDonald's application.

control physician and that there was no evidence that he was abusing Avinza. On the other hand, Dr. Hand was concerned that Avinza was a long acting oral form of morphine with numerous reported potential side effects. Dr. Hand stated that if a member of the PSP "were to take this drug for a legitimate reason they would be excluded from any critical duty and placed on medically limited duty until such time as they no longer used this drug." Dr. Hand believed that chronic use of Avinza could result in a cognitive deficit and he was "not able to say that Mr. McDonald would be able to function in the capacity of a certified municipal police officer who is engaged in the day to day tasks of law enforcement in which coherent, quick and precise decision making is paramount." In summary, Dr. Hand opined:

> I am *mightily resistant* (emphasis in original) to the assertion, or belief, that they would be able to respond appropriately in situations that require split second thinking and instantaneous action to protect themselves and the public. I believe it to be imprudent to allow Mr. McDonald to be certified as a municipal police officer while using this medication.

Dr. Hand did not know whether McDonald actually suffered from any of the potential side effects of Avinza and he acknowledged that no physical or mental side effects had been reported. Nevertheless, as set forth in a letter dated October 14, 2008, MPOETC continued to withhold Act 120 certification "because of his daily use of Avinza, a prescription narcotic, and its potential side effects . . . ." Counsel for McDonald made another request for a hearing on October 28, 2008. On October 30, 2008, Lisa A. Weidner, M.D., opined that McDonald had been stable on his present medications, had demonstrated no side effects from the Avinza and was "neurologically intact and functioning fully cognitively." Dr. Weidner had no concerns that McDonald would have any limitations due to his chronic pain or the medications prescribed for

treating that pain.  On November 14, 2008, MPOETC again advised counsel that McDonald was not entitled to a hearing.

McDonald's contract as Chief of Operations with the Borough expired on December 31, 2008.  Pursuant to a settlement agreement,[3] McDonald remained on a "leave of absence" for the entire 2009 calendar year.  McDonald is now employed doing investigative services for the Travelers Group.

The Complaint in this case was filed by Plaintiff on April 15, 2009 and asserted the following claims:  (1) a violation of § 504 of the Rehabilitation Act by the Pennsylvania State Police ("PSP"); (2) a violation of Title II of the Americans With Disabilities Act ("ADA") by Defendant Pawlowski in his official capacity as Commissioner of the PSP, for which McDonald seeks declaratory and injunctive relief; and (3) a Due Process violation by Defendant Gallaher in his individual capacity.  Plaintiff seeks declaratory relief; compensatory damages at Count 1; injunctive relief at Count 2 in the form of an Order that Defendants certify Plaintiff as a police officer; and attorneys fees and costs.

Defendants seek summary judgment on all counts.  In its April 1, 2011 Memorandum Opinion, the Court granted summary judgment on the ADA and Rehabilitation Act claims based on *Lekich v. Pawlowski*, 361 Fed. Appx. 322 (3d Cir. January 15, 2010) (non-precedential), in which the United States Court of Appeals for the Third Circuit had recently rejected very similar ADA and Rehabilitation Act claims and held that MPOETC is not a "covered entity."   The Court also granted summary judgment on McDonald's due process claim against Gallaher.  On appeal, the United States Court of Appeals for the Third Circuit held that this Court erred in

---

[3] McDonald had filed an EEOC charge against the mayor of Ellwood City.

disposing of the ADA and Rehabilitation Act claims on the basis of the holding in *Lekich* that

Defendants were not "covered entities" [4] and pointed out that McDonald's claim was based on

Title II of the ADA, which prohibits discrimination by "public entities." The case was remanded

for this Court to address Defendants' other defenses to the ADA and Rehabilitation Act claims.

The Court of Appeals further instructed that it would be inappropriate for this Court to decide

whether the abrogation of sovereign immunity in Title II of the ADA was constitutional "unless

and until it is decided that McDonald has made out a distinct Title II claim." Opinion at 6 n.1.

The Court of Appeals affirmed this Court's decision as to the due process claim.


## Standard of Review

Federal Rule of Civil Procedure 56 governs summary judgment. In interpreting Rule 56,

the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time
> for discovery and upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential to that party's case, and
> on which that party will bear the burden of proof at trial. In such a situation, there
> can be "no genuine issue as to material fact," since a complete failure of proof
> concerning an essential element of the non-moving party's case necessarily
> renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). The court must view the facts in a light most favorable to the non-moving party, and

the burden of establishing that no genuine issue of material fact exists rests with the movant.

*Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be

---

[4] The term "covered entity" applies to claims brought under Title I of the ADA.

ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has fulfilled this responsibility, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.


**Legal Analysis**

MPOETC has the responsibility under Pennsylvania law to certify whether or not a candidate has the physical and mental ability to serve as a municipal police officer. MPOETC concluded that McDonald should not receive such certification due to his long-term consumption

of the medically prescribed narcotic drug Avinza.  Plaintiff points to evidence from numerous

medical professionals who have opined that he is physically and mentally capable of performing

the duties and responsibilities of a police chief and suffers no side effects from Avinza.

Nevertheless, MPOETC has adhered to a rigid position that consumption of Avinza prevents

McDonald from being certified.  In essence, Plaintiff is asking the Court (or a jury) to override

MPOETC's certification decision.


ADA and Rehabilitation Act Claims

Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs or activities of a public entity, or be subjected to

discrimination by any such entity."  The Rehabilitation Act, 29 U.S.C. § 794(a), provides: "No

otherwise qualified individual with a disability ... shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance...."  In the case of *Inmates of*

*Allegheny County Jail v. Wecht*, 93 F.3d 1124, 1136 (3d Cir. 1996)[5], the Court of Appeals

explained that the substantive legal standards governing claims under the Rehabilitation Act and

Title II of the ADA are identical:

> Although the language of the two statutes differs slightly-e.g., the Rehabilitation
> Act protects against discrimination "solely by reason of ... disability," whereas the
> ADA protects against discrimination "by reason of ... disability"-the standards

---

[5] This opinion was vacated after the Court granted rehearing en banc, 93 F.3d 1146.  However, the opinion was subsequently cited by the Court of Appeals in *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 200 (3d Cir. 2008), and provides a succinct summary of the applicable law.

under the two statutes are identical. *McDonald v. Pennsylvania Department of Public Welfare*, 62 F.3d 92, 94 (3d Cir. 1995) ( "Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same."). We have held that there are four elements for establishing a violation of section 504: (1) that the plaintiff is an "individual with a disability" as defined under the Act, (2) that the plaintiff is "otherwise qualified" for the program sought or that the plaintiff would be qualified if the defendant made reasonable modifications to the program, (3) that the plaintiff was excluded from the program "solely by reason of her or his disability," and (4) that the program receives federal funds. *Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1009 (3d Cir. 1995). With the exception of the fourth element, which is not pertinent to a claim brought under the ADA, the elements of a claim under Title II of the ADA are interchangeable with the elements of a claim under section 504. Thus, an ADA Title II claimant must show (1) that the plaintiff is "qualified" or that the plaintiff would be qualified if the defendant made reasonable modifications, (2) that the plaintiff has a "disability," and (3) that "by reason of such disability," the plaintiff was excluded from a service, program, or activity provided by a public entity.

*Accord Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 553 n.32 (3d Cir. 2007). In essence, Title II of the ADA applies the Rehabilitation Act standard to all public entities, regardless of whether they receive federal funds. *Id*.


Contentions of the Parties

McDonald alleges that Defendants regarded him as physically and/or cognitively disabled due to his back injury and use of Avinza. Plaintiff also contends that his ADA claim for prospective relief is not barred pursuant to the *Ex Parte Young* doctrine and that Congress has abrogated Eleventh Amendment immunity in the ADA, 42 U.S.C. § 12202. Plaintiff further argues that it is irrelevant that MPOETC does not directly receive federal funds because it is not a separate agency, but rather, is part of the PSP, which does receive federal funds. Finally, Plaintiff contends that there are a multitude of factual disputes as to whether he is a qualified

person with a physical or cognitive disability; whether Defendants regarded him as substantially limited in his ability to work; and whether he was excluded from a broad class of jobs. In his post-remand supplemental brief, Plaintiff additionally contends that Title II validly abrogated sovereign immunity of the states and that Defendants regarded him as substantially limited in the major life activity of working.

Defendants contend that the ADA and Rehabilitation Act claims are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution. Defendants also contend that the Rehabilitation Act claim must fail because MPOETC, allegedly the real party in interest, receives no federal funding. Finally, Defendants argue that Plaintiff cannot show that he has an actual disability; that he is otherwise qualified for the position of police officer; or that he is significantly restricted from performing a broad range of jobs. In their post-remand brief, Defendants reiterate these contentions and emphasize that they are entitled to immunity and that McDonald is not "disabled."


*Lekich v. Pawlowski*

As noted above, this Court's April 1, 2011 Memorandum Opinion relied heavily on *Lekich*, 361 Fed. Appx. at 322, which arose from a very similar fact situation. Lekich was a police officer candidate who had completed the police training program and received an offer of employment from a borough police department, contingent upon MPOETC certification. The examining physician determined that Lekich was color-blind, in contravention of MPOETC certification requirements. The employment offer from the borough was then rescinded. Lekich secured another doctor's opinion that the color perception problem would not interfere with his

13

ability to perform the job of a police officer and sought to have MPOETC either waive the vision requirement or consider the new medical opinion.  MPOETC refused because the application packet had been withdrawn by the borough.  As in this case, the conduct at issue occurred prior to January 1, 2009, the effective date of the ADA Amendments Act of 2008 ("ADAAA").[6] Lekich filed claims under the ADA, Rehabilitation Act, Section 1983 and the Pennsylvania Human Relations Act against Pawlowski, in his official capacity as Chairman of MPOETC.  The district court granted summary judgment to Defendant on all claims and the Court of Appeals affirmed.

As in this case, MPOETC was acting as a public certification agency, rather than as a direct employer.  The *Lekich* Court held that "MPOETC did not violate the non-discrimination in employment provisions of the ADA because it is not subject to them."  *Id.* at 326.  The Court explained that MPOETC is not a "covered entity" as defined in 42 U.S.C. § 12111(2), but "is merely a governmental body that certifies that an applicant has or has not met certain preordained guidelines when a police department – an employer – directs it to process an application."  *Id*. at 325-26.  In remanding the instant case, the Court of Appeals held that *Lekich* is not dispositive because it cited Title I of the ADA, while McDonald's claim is based on Title II of the ADA.[7]

In *Lekich*, the Court of Appeals also concluded that even assuming, arguendo, MPOETC is covered by the ADA, the discrimination claims asserted by Lekich lacked merit.  Specifically,

---

[6] In *Britting v. Secretary, Dept. Of Veterans Affairs*, 409 Fed. Appx. 566, 569 (3d Cir. February 1, 2011) (non-precedential), the Court of Appeals held that the ADAAA is not retroactive.
[7] The Complaint in *Lekich* did not specifically state whether it was based on Title I and/or Title II of the ADA.

the Court held that MPOETC had not taken an adverse employment action because Lekich's job offer was withdrawn and MPOETC was never in a position to make a final certification decision. *Id*. at 326. The alternative holding in *Lekich* does not resolve this case because McDonald <u>did</u> have an employment offer and MPOETC did deny his certification request. Thus, the Court turns to an examination of the merits of McDonald's claims.

<u>Whether McDonald is "Disabled"</u>

McDonald alleges that he suffers from a disability. It is unclear whether the alleged disability is physical (from the underlying back injury suffered in the car accident); cognitive (from the alleged side effects of Avinza); or some combination thereof. Defendants contend that McDonald does not suffer from a disability.

The Court concludes that there is no genuine factual dispute as to whether McDonald suffers from an actual disability. McDonald avers that he is "completely fit to serve as a police officer." Complaint at 1. The evidentiary record in this case supports that averment. Physically, McDonald passed a strenuous Functional Performance Evaluation in March 2008, which included stair climbing, pushing/pulling a 100-pound sled, and lifting 50 pounds. McDonald testified in his deposition that, with Avinza, he has no physical limitations that would prevent him from performing the duties of a police officer.[8] He can bend, handcuff a suspect who is lying on the ground, lift a person, and subdue a person. Indeed, McDonald performed the job of Chief of Operations for the Elwood City police department while his certification request was

---

[8] Because the ADAAA is not retroactive, the ameliorative effects of medications may be considered in evaluating the extent of an individual's impairments. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 499 (1999).

pending.  McDonald was functionally limited only as to the ability to sit in a car for hours on end or to stand in one place for an extended period of time.  On April 17, 2008, Dr. Uran performed a Psychological Examination and opined that McDonald was psychologically capable of exercising appropriate judgment and restraint to be certified as a police officer.  After an IME in August 2008, Dr. Levy opined:  "Based on his presentation today, my opinion is that Mr. McDonald is fit for duty as the police chief of Ellwood City Police Department and capable of performing all the essential tasks of a police officer."  Based on this record, no reasonable jury could conclude that McDonald has an actual disability.

In the alternative, McDonald also contends that Defendants "regarded" him as disabled. Indeed, this is the primary contention set forth in McDonald's supplemental brief.  In *Sutton*, 527 U.S. at 489 (an ADA Title I case), the Supreme Court explained:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of ... individual ability."

The *Sutton* Court further explained that "the purpose of the regarded as prong is to cover individuals rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities."  *Id*. at 489-90.  *Accord New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 303-04 (citing *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 (1987)) ("courts should be mindful of the ADA and Rehabilitation Act's goals of eliminating

discrimination against individuals with disabilities and protecting those individuals from deprivations based on prejudice, stereotypes, or unfounded fear.").

McDonald contends that by denying his certification, he has been disqualified from performing a class or broad range of law enforcement jobs that utilize his training, knowledge and skills and therefore Defendants regarded him as being substantially limited in the major life activity of "working." The parties vigorously dispute the scope of law enforcement jobs available to McDonald without MPOETC certification. Defendants point out that he is presently employed as an investigator for an insurance company and worked for several years as "Director of Operations" of the Ellwood City police department. Defendants further contend that MPOETC certification is not needed for law enforcement positions with the federal government, the Office of the Attorney General of Pennsylvania, a private detective, a park ranger, or campus police. *See Sutton*, 527 U.S. at 471 (myopic airline pilots not regarded as disabled because they could work as regional pilots or instructors). McDonald responds that MPOETC certification, or its equivalent, is necessary for many of these positions, and that Defendants apply the same drug standards for administering Act 235 lethal weapons certification. *See Williams v. Philadelphia Housing Authority*, 380 F.3d 751, 763 (3d Cir. 2004) (police officer regarded as disabled because mental condition disqualified him from broad class of law enforcement jobs). Due to this focus, the parties have not comprehensively addressed other facets of the "regarded as" theory.

As the Court of Appeals instructed in remanding this case, decisions citing Title I must be treated with caution. Moreover, the Supreme Court in *Sutton* noted the conceptual difficulties inherent in "regarded as" claims based on alleged limitations in the major life activity of working. 527 U.S. at 492. Neither party has addressed the difficulties in applying ADA Title I

17

"regarded as" cases to the facts and circumstances of this ADA Title II case. Indeed, in *Farid v. Bouey*, 554 F. Supp.2d 301, 327 n. 19 (N.D.N.Y. 2008), the Court suggested that the "regarded as" theory may not even apply to Title II claims:

> While the definition of a disabled individual under the ADA includes a person regarded as having a physical or mental impairment substantially limiting one or more major life activities, that definition section appears to apply only to disability discrimination in the employment setting under Title I of the ADA, and discrimination based upon a perceived disability is not similarly actionable under Title II in a setting such as that now at issue. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(a)-(f), ( l ) (indicating that this definition of a perceived disability applies to employers and other covered entities under Title I, such as employment agencies). The same does not appear to hold true, however, with respect to section 504. *see* 45 C.F.R. § 84.3(j)(2)(iv)(C).

Conceptually, there is a fundamental distinction between an individualized determination by a state certification/licensing board and the stereotypical prejudice by employers that ADA Title I was intended to address.[9] A certification board, such as MPOETC, is established for the very purpose of considering and evaluating whether an applicant can perform the essential functions of a job. MPOETC does not consider whether an individual is significantly limited in the major life activity of working – it merely considers whether or not the applicant is entitled to the particular certification within its authority. Phrased another way, there is no evidence in this record that MPOETC regarded McDonald as "disabled," as opposed to simply regarding him as unfit for certification as a municipal police officer.

---

[9] The parties have not cited any ADA Title II cases involving a professional license or certification decision. The Court has found only a few such cases in its own research, each of which has held that such claims are barred by the Eleventh Amendment. *See Reese v. State of Michigan*, 234 F.3d 1269 (6th Cir. 2000) (non-precedential) (denial of certification to color-blind police officer); *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999) (en banc) (same); *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) (denial of physician license).

Another conceptual difficulty with McDonald's claims is that MPOETC's denial was not based on an inherent physical or cognitive limitation, but on the potential side effects of his prescribed medication, Avinza.  In *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185-86 (3d Cir. 2010), the Court of Appeals for the Third Circuit recognized that an alleged disability due to the side effects of a medication is different than a disability resulting from the underlying health problem the medication was meant to treat.  The Court explained that in a limited way, such side effects may constitute a disability:

> For a treatment's side effects to constitute an impairment under the ADA, it is not enough to show just that the potentially disabling medication or course of treatment was prescribed or recommended by a licensed medical professional. Instead, following the *Christian* test, the medication or course of treatment must be required in the "prudent judgment of the medical profession," and there must not be an available alternative that is equally efficacious that lacks similarly disabling side effects. *Christian*, 117 F.3d at 1052. The concept of "disability" connotes an involuntary condition, and if one can alter or remove the "impairment" through an equally efficacious course of treatment, it should not be considered "disabling."

*Id*. at 187.  In this case, Dr. Hand's resistance to certification for McDonald was expressly limited to the period "while using this medication."  On this record, it appears that McDonald could have obtained his certification by switching to a non-narcotic pain reliever or by stopping his pain medication altogether.  It is the plaintiff's burden to demonstrate that the medication causing the side effects is medically necessary.  *Id*.  There is no evidence in the record that Avinza was the "only efficacious medication."  *Id*.  Cases from other appellate courts have rejected similar claims involving the side effects of medications.  *See Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 706 (6th Cir. 2008) (employer's belief that back condition and current medication levels precluded Plaintiff from using dangerous machinery as required to perform maintenance technician job did not establish ADA "regarded as" claim); *EEOC v. JB*

*Hunt*, 321 F.3d 69, 73-78 (2d Cir. 2003) (belief that side effects of medication prevented individual from safely driving a commercial truck did not establish ADA "regarded as" claim); *King v. Mrs. Grissom's Salads, Inc*., 187 F.3d 636 (6th Cir. 1999) (non-precedential) (refusal to certify truck driver due to his use of Dexedrine was not the type of blanket exclusion that violated ADA).

McDonald clearly did not have an actual disability. Nor does the denial of certification by MPOETC fit within the "regarded as" disability theory due to a substantial limitation in the major life activity of working. MPOETC merely refused to certify McDonald as a police officer due to concern over the side effects of his Avinza medication. McDonald has not demonstrated that Avinza was the only efficacious medication. In sum, McDonald has not satisfied this element of the prima facie case and therefore Defendants are entitled to summary judgment.

Whether McDonald is "Otherwise Qualified"

Assuming, arguendo, that McDonald had an actual or regarded as disability, the Court concludes that he was not an "otherwise qualified" individual because he was unable to perform the essential functions of a police officer. Plaintiff bears the burden of proving that he is a qualified individual. *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996). There is a two-prong test for determining whether someone is a qualified individual under the ADA: (1) whether the individual satisfies the prerequisites for the position, by possessing the appropriate educational background, employment experience, skills and licenses; and (2) whether the individual can perform the essential functions of the position, with or without reasonable accommodation. *Gaul v. Lucent Techs., Inc*., 134 F.3d 576, 580 (3d Cir. 1998). It is certainly clear that McDonald

meets the first prong of the test, as he possesses impressive education, skills and experience. However, MPOETC determined that he could not perform the essential functions of the job.

It is well-established, and undisputed in this case, that the job of a police officer is uniquely demanding. As explained by the United States Supreme Court, "police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). *Accord Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) ("[P]olice departments place armed officers in positions where they can do tremendous harm if they act irrationally.").

In *Diaz v. City of Philadelphia*, 2012 WL 1657866 *13 (E.D. Pa. 2012) (opining that a jury should not decide what constitutes "reasonable accommodation" in an ADA claim), a sister court recently explained that an officer's mental fitness for duty was a unique situation:

> we are satisfied that when dealing with the unique situation of police officers and issues related to their mental health it would be ill-advised to second-guess the personnel decisions of a police department when it is deciding how it can use a police officer who suffers from mental health problems. The police department, not a jury, is uniquely qualified to make such sensitive decisions.

In *Diaz*, the Court reasoned that the ADA does not apply to such decisions:

> "Especially in the context of police officers, employers do not violate the ADA by ensuring that officers are psychologically fit for duty." *Davis–Durnil v. Vill. of Carpentersville*, 128 F.Supp.2d 575, 580 (N.D. Ill. 2001). PPD's concern that its officers' mental health issues be resolved before they serve on active duty is unquestionably reasonable.

*Id*. at *11. *Diaz* also cited cases for the proposition that an evaluation of a police officer's fitness for duty does not violate § 12112(d)(4) of the ADA. *Id*. at *11 n. 28 (citing *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007); *Pennsylvania State Troopers Ass'n v. Miller*, 621 F.Supp.2d

246, 256 (M.D. Pa. 2008) ("ensuring members' fitness for duty is a business necessity vital to the operation" of police departments). The EEOC ADA guidance manual cites an inquiry into a police officer's use of medications as an example of a situation that would not violate the ADA:

> In limited circumstances, however, certain employers may be able to demonstrate that it is job-related and consistent with business necessity to require employees in positions affecting public safety to report when they are taking medication that may affect their ability to perform essential functions. Under these limited circumstances, an employer must be able to demonstrate that an employee's inability or impaired ability to perform essential functions will result in a direct threat. **For example, a police department could require armed officers to report when they are taking medications that may affect their ability to use a firearm or to perform other essential functions of their job**.

EEOC, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (ADA), *available at* http://www.eeoc.gov/policy/docs/guidance-inquiries.html (emphasis added). Thus, the EEOC has recognized that police departments may consider the side effects of medications in determining whether an officer can perform the essential functions of the job.

The same concerns are equally applicable in this case. MPOETC is the entity uniquely qualified to make certification decisions under Pennsylvania law. It has determined that the use of Avinza prevents McDonald from being able to respond appropriately in situations that require split second thinking and instantaneous action to protect themselves and the public. *See* Opinion of Dr. Hand.

The Court recognizes the significant medical evidence in support of McDonald's position that Avinza does not impair his personal cognitive condition and is empathetic to his plight. The Court has located two cases in its own research which involved similar factual situations and appear to support Plaintiff's position. *See Stillwell v. Kansas City, Mo., Bd. of Police Comm'rs*,

872 F. Supp. 682, 686–88 (W.D. Mo. 1995) (blanket exclusion of one-handed applicants from licensing as police officers violated ADA Title II); *Bombrys v. City of Toledo*, 849 F.Supp. 1210, 1216–19 (N.D. Ohio 1993) (blanket exclusion of insulin-dependent diabetic police officers violated ADA Title I); *see also Gaus v. Norfolk Southern RR Co.*, 2011 WL 4527359 (W.D. Pa. 2011) (denying summary judgment where railroad electrician was barred from work due to blanket medication guidelines).  The lesson of these cases is that each decision must be based on an individualized assessment.  *But see King v. Mrs. Grissom's Salads, Inc.*, 187 F.3d at 636 (refusal to certify driver due to side effects of medication is not the type of "blanket exclusion" that violates ADA).  It is clear that McDonald's application received lengthy, individualized attention which included a substantial number of personal medical evaluations.  However, the ultimate decision by MPOETC was arguably based on Dr. Hand's blanket opinion that use of Avinza precludes anyone from serving as a police officer, regardless of the lack of side effects.

Nevertheless, the Court is reluctant to usurp MPOETC's authority to issue certifications.  A police certification commission should be entitled to evaluate the potential side effects of medications in deciding whether a police officer is capable of performing the essential functions of this uniquely challenging job without running afoul of the ADA.  Absent evidence of the type of unreasoning prejudice at which the ADA was aimed, the difficult individualized decisions in this unique arena are not well-suited for second-guessing by a Court or jury.   In sum, the Court concludes that McDonald is not "otherwise qualified."

<u>Whether McDonald Was Excluded from a Public Service By Reason of His Disability</u>

As part of his prima facie case, McDonald must prove that he was "excluded" from a service, program, or activity provided by a public entity by reason of his alleged disability. It is undisputed that MPOETC accepted McDonald's application and gave full and repeated consideration to his situation over a lengthy period of time. Indeed, the Court of Appeals has affirmed that McDonald received due process from MPOETC. McDonald does not really contend that he was "excluded" from the "services" provided by MPOETC. Instead, he disagrees with the substantive result MPOETC reached on his application. This does not satisfy the prima facie case requirements.

<u>Whether the PSP is the Proper Defendant</u>

Defendants contend that McDonald has not named the correct parties because the real party in interest is MPOETC. In particular, Defendants contend that the Rehabilitation Act claim in Count 1 must fail because the MPOETC does not receive federal funding.

As an initial matter, the ADA claim in Count 2 is asserted against Pawlowski in his official capacity as Commissioner of the PSP.[10] The claim against Pawlowski in his "official capacity" is merely an alternative method of pleading an action against the PSP. *Lekich*, 361 Fed. Appx. at 325 (*citing Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002)). Thus, in essence, both Counts I and II are claims against the PSP.

---

[10] In *Speck v. City of Philadelphia*, 2007 WL 2221423 *9 (E.D. Pa. 2007), the Court explained that injunctive relief could not be obtained against state officials in their personal capacities for actions taken in their official capacities.

McDonald maintains that the entity he named as a Defendant, PSP, does receive federal funding. Indeed, this fact is undisputed. As Plaintiff is master of his Complaint, he is entitled to limit his claims and select the Defendant(s). *See Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). A defendant is not entitled to re-formulate a plaintiff's claims. *See American Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, 2007 WL 1202760 *3 n.4 (W.D. Pa. 2007) (allowing defendants to reformulate plaintiff's causes of action would be inconsistent with the rule that plaintiff is master of his complaint and with the Court's obligation to take plaintiff's allegations as true). Accordingly, Defendant's contention that Count 1 must fail due to lack of federal funding must be rejected.

However, the Court must then consider whether McDonald's asserted injury and requested relief is redressable via claims against the PSP. *See Pichler v. UNITE*, 542 F.3d 380, 390 (3d Cir. 2008) ("the injury has to be fairly traceable to the challenged action of the defendant, and not the result of some third party not before the court").[11]

The Court concludes that the proper Defendant in this action should have been MPOETC. MPOETC is subject to suit directly, *see, e.g., Lekich*, but McDonald consciously decided to not name it as a Defendant and has opposed Defendants' efforts to identify MPOETC as the real party in interest in this case. Although MPOETC is included within the PSP budget and is listed on the PSP organizational chart, MPOETC is a separate entity. MPOETC is a twenty member

---

[11] *Pichler* discussed Article III standing. In *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 513–515 (2006), the Supreme Court articulated a distinction between "jurisdictional" flaws which deprive the Court of subject-matter jurisdiction and those which render a claim invalid on the merits. The Court believes, without deciding, that the apparent flaw in this case falls into the latter category. McDonald has suffered an injury and has presented claims under federal law and the analysis of whether he named the correct party is inextricably linked to the analysis of the merits of his claims. Accordingly, the Court has not requested separate briefing on this jurisdictional issue.

commission created by Act 120, 53 P.S. § 2161 et seq., and charged with the responsibility to establish and administer training and certification of police officers. 53 P. S. § 2164. Specific regulations have been promulgated for MPOETC actions. Of particular relevance, final orders of the MPOETC are issued by majority vote. *See* 37 Pa. Code § 203.103. MPOETC, not the PSP, determines the qualifications for certification as a municipal police officer. Indeed, McDonald recognized that this task was the responsibility of MPOETC. Complaint ¶ 5.

 The PSP did not cause McDonald's claimed injury (i.e., the denial of certification) and the PSP cannot provide McDonald with the relief he seeks. In particular, a Court Order directing the PSP to certify or re-certify McDonald would be unenforceable. Defendant Pawlowski served as the Chairman of MPOETC by virtue of his position as the Commissioner of the PSP. 53 Pa.C.S.A. § 2163. However, even assuming that Pawlowski is named as a Defendant in his role as Chairman of the MPOETC rather than as Commissioner of the PSP, he has only one vote. Nothing in the statute or applicable regulations authorize Pawlowski to dictate the outcome of MPOETC certification decisions and the other 19 members of MPOETC are not before the Court.[12] In sum, even if the Rehabilitation Act and ADA claims were viable against MPOETC, the actual Defendants named in this action by McDonald are entitled to summary judgment.


Intervention by United States

 The Court of Appeals instructed this Court that it would be inappropriate to decide whether the abrogation of sovereign immunity in ADA Title II was constitutional unless it first concluded that McDonald had made out a valid claim. For the reasons hereinabove set forth, the

---

[12] Major Gallaher, Executive Director of MPOETC, was named solely in his individual capacity.

Court concludes that McDonald has not made out a valid ADA claim.  Accordingly, it need not decide the constitutional issue.

### Conclusion

Mr. McDonald is a litigant with whom the Court empathizes.  He has certainly presented substantial evidence of his fitness to serve as a police chief and it appears that the denial of his certification may have been based on a blanket rule regarding the use of a narcotic drug rather than McDonald's individual circumstances.  On the other hand, McDonald is asking the Court (or a jury) to substitute its own view of his fitness for duty for that of MPOETC, the Commission created by the Commonwealth of Pennsylvania to perform that role.  For the reasons set forth, McDonald's claims do not fit within the contours of the existing law.   Accordingly, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 46) will be **GRANTED**. An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:09 – cv – 00442 |
| | ) | |
| PENNSYLVANIA STATE POLICE; | ) | |
| COLONEL FRANK PAWLOWSKI, | ) | |
| Commissioner of Pennsylvania State Police | ) | |
| in his official capacity; MAJOR JOHN | ) | |
| GALLAHER, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF COURT**

**AND NOW**, this 31st day of October, 2012, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 46) is **GRANTED**.

The clerk is directed to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:    Timothy P. O'Brien, Esq.
       1705 Allegheny Building
       429 Forbes Avenue
       Pittsburgh, PA 15219

       Mark J. Murphy, Esq.
       Disability Rights Network of PA
       1315 Walnut Street, Suite 400
       Philadelphia, PA 19107

       Carol Horowitz
       Disability Rights Network of PA
       429 Fourth Avenue, Suite 701
       Pittsburgh, PA 15219

       Robert A. Willig
       Tracey A. Wilson
       Office of the Attorney General
       6th Floor, Manor Complex
       564 Forbes Avenue
       Pittsburgh, PA 15219

       Sasha M. Samberg-Champion
       US Department of Justice, Civil Rights Division, Appellate S
       P.O. Box 14403
       Ben Franklin Station
       Washington, DC 20044-4403